Alan Schoenfeld (New Jersey
Bar No. 285532018)
Marissa M. Wenzel*
Todd Clayton*
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800 (phone)
(212) 230-8888 (fax)
alan.schoenfeld@wilmerhale.com
marissa.wenzel@wilmerhale.com
todd.clayton@wilmerhale.com

Christopher Davies*
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000 (phone)
(202) 663-6363 (fax)
christopher.davies@wilmerhale.com

*Motion for admission pro hac vice
forthcoming

*Attorneys for Defendant Choreograph LLC*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *et al.*,<br><br>              Plaintiffs,<br><br>v.<br><br>CHOREOGRAPH LLC, *et al.*,<br><br>              Defendants. | No. 2:24-cv-4271<br><br>**State Court Docket**:<br>Superior Court of New Jersey,<br>Law Division, Bergen County<br>Case No. BER-L-00920-24<br>Complaint Filed:   February 9, 2024 |

## NOTICE OF REMOVAL

## LOCAL RULE 10.1 STATEMENT

1.      Plaintiff Atlas Data Privacy Corporation maintains offices at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.   Compl. ¶ 25. The complaint does not identify the addresses of the remaining plaintiffs. Plaintiffs are represented by Rajiv D. Parikh and Kathleen Barnett Einhorn of Genova Burns LLC, 494 Broad Street, Newark, New Jersey 07012, as well as John A. Yanchunis and Ryan J. McGee of Morgan & Morgan, 201 N. Franklin St., 7th Floor, Tampa, Florida 33602.   The principal place of business for Choreograph is 3 World Trade Center, 175 Greenwich Street, New York, New York 10007. Choreograph is represented by Alan Schoenfeld, Marissa M. Wenzel, and Todd Clayton of Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, New York 10007, as well as Christopher Davies of Wilmer Cutler Pickering Hale and Dorr LLP, 2100 Pennsylvania Avenue NW, Washington, District of Columbia 20037.

## NOTICE OF REMOVAL

2.      For the reasons stated below, and pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Choreograph LLC hereby removes the action filed by Plaintiffs Atlas Data Privacy Corporation, Jane Doe-1, Jane Doe-2, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev, and William Sullivan from the Superior Court of New Jersey Law Division,

Bergen County, Civil Action No. BER-L-00920-24, to the United States District Court for the District of New Jersey.   This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1332(a) and (d).

3.    Choreograph denies any liability and reserves all rights and defenses.[1] This Notice of Removal is based primarily on the allegations in Plaintiffs' complaint and assumes they are true, as required at this stage.   Choreograph does not admit the truth of facts asserted in the complaint or the validity of Plaintiffs' claims.   Choreograph denies that Plaintiffs are entitled to any relief.

4.    As grounds for removal, Choreograph states as follows.

## INTRODUCTION

5.    On February 9, 2024, Plaintiff Atlas Data Privacy Corporation, "as the assignee of the claims of approximately 19,251 individuals," Compl. ¶ 26, along with Plaintiffs Jane Doe-1, Jane Doe-2, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev, and William Sullivan filed an action against Choreograph titled *Atlas Data Privacy Corporation, et al. v. Choreograph*

---

[1]  *See Advanced Surgery Ctr. v. Conn. Gen. Life, Ins. Co.*, 2012 WL 3598815, at *10 (D.N.J. July 31, 2012) ("'[A] party who removes an action from a state to a federal court does not thereby waive any of his or her Federal Rule 12(b) defenses or objections.'"), *report & recommendation adopted*, 2012 WL 3598799 (D.N.J. Aug. 21, 2012).

*LLC, et al.*, Civil Action No. BER-L-00920-24, in the Superior Court of New Jersey Law Division, Bergen County.

6.    Plaintiffs assert, "upon information and belief," that Choreograph violated Daniel's Law, N.J. Stat. Ann. § 47:1A-1, *et seq.*, and N.J. Stat. Ann. § 56:8-166.1, by failing to "cease the disclosure or re-disclosure" of certain protected information.   Compl. ¶ 53.

7.    On February 26, 2024, Atlas delivered the complaint to Choreograph's registered agent in New York.

8.    A copy of the complaint and all process, pleadings, and orders filed in the state action is attached as **Exhibit A**.

## LEGAL STANDARD

9.    Under 28 U.S.C. § 1446, a defendant seeking to remove a civil action to federal court must file "a short and plain statement of the grounds for removal." By "borrowing the familiar 'short and plain statement' standard from Rule 8(a)," Congress sought to "clarify that courts should 'apply the same liberal rules [to removal allegations] that are applied to other matters of pleading.'"   *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014) (alteration in original).   No "evidentiary submissions" are required.   *Id.* at 84.

## PARTIES

10.    Plaintiff Atlas asserts itself to be "a Delaware corporation" with offices in New Jersey.   Compl. ¶ 25.

11.    Plaintiff Jane Doe-1 appears to be a resident of New Jersey.   She is identified as a "police officer working in Northern New Jersey."   Compl. ¶ 15. Under New Jersey law, "[e]very member of a police department and force shall be a resident of the State of New Jersey while serving in such position."   N.J. Stat. Ann. § 40A:14-122.8.

12.    Plaintiff Jane Doe-2 is alleged to be a resident of New Jersey. Compl. ¶ 16.

13.    Plaintiff Edwin Maldonado appears to be a resident of New Jersey. He is alleged to have "joined the Plainfield, New Jersey police department … in 2000," and there is no allegation that his service has concluded.   Compl. ¶ 17. Thus, the allegations suggest that he is a "member of a police department" and therefore a mandatory New Jersey resident under N.J. Stat. Ann. § 40A:14-122.8.

14.    Plaintiffs Scott Maloney and Justyna Maloney are alleged to be New Jersey residents.   Compl. ¶ 18.

15.    Plaintiff Patrick Colligan appears to be a resident of New Jersey.   He is alleged to be "a 32-year veteran of the Franklin Township police department," and there is no allegation that his service has concluded.   Compl. ¶ 22.   Thus, the

4

allegations suggest that he is a "member of a police department" and therefore a mandatory New Jersey resident under N.J. Stat. Ann. § 40A:14-122.8.

16.    Plaintiff Peter Andreyev appears to be a resident of New Jersey.   He is alleged to be "a 32-year veteran of the Point Pleasant, New Jersey police department," and there is no allegation that his service has concluded.   Compl. ¶ 23.   Thus, the allegations suggest that he is a "member of a police department" and therefore a mandatory New Jersey resident under N.J. Stat. Ann. § 40A:14-122.8.

17.    Plaintiff Officer William Sullivan appears to be a resident of New Jersey.   He is alleged to be "an 18-year veteran of the New Jersey Department of Corrections," and there is no allegation that his service has concluded.   Compl. ¶ 24.   Under New Jersey law, "[e]very person holding an office, employment, or position … with an authority, board, body, agency, commission, or instrumentality of the State … shall have his or her principal residence in this State[.]"   N.J. Stat. Ann. § 52:14-7.

18.    Defendant Choreograph LLC is wholly owned by York Merger Square 2009 LLC, which is, in turn, wholly owned by WPP Group USA Inc. Both Choreograph LLC and WPP Group USA Inc. are incorporated in Delaware and maintain their principal places of business in New York.

19.    Richard Roes 1-10 are fictitious names of unknown individuals who are alleged to be defendants in this action.

20.    ABC Companies 1-10 are fictitious names of unknown entities who are alleged to be defendants in this action.

## DIVERSITY JURISDICTION

21.    Under 28 U.S.C. § 1332, a federal district court has original jurisdiction over a civil action between "citizens of different States" in which the amount in controversy exceeds the sum or value of $75,000.

22.    This action meets those criteria.   Accordingly, removal is proper. *See* 28 U.S.C. § 1441.

### I.    *Complete Diversity Exists*

23.    The requirement under 28 U.S.C. § 1332 that parties be "citizens of different States" demands "[c]omplete diversity," meaning that, "in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant."   *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010).   "The key inquiry in establishing diversity is thus the 'citizenship' of each party to the action."   *Id.*

24.    Beginning with the defense side, Choreograph is an LLC and thus its citizenship "is determined by the citizenship of its … members."   *Zambelli*, 592 F.3d at 420.   "[W]here an LLC has, as one of its members, another LLC, 'the

6

citizenship of unincorporated associations must be traced through however many layers of partners or members there may be' to determine the citizenship of the LLC." *Id.* Here, Choreograph's sole member is another LLC: York Merger Square 2009 LLC. That LLC is, in turn, wholly owned by WPP Group USA Inc., a corporation. "A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business." *Id.* at 419. WPP Group USA Inc. is a citizen of both Delaware and New York. *See supra* ¶ 18. Therefore, the same is true for Choreograph. *See Zambelli*, 592 F.3d at 420.

25.    The remaining defendants, Richard Roes 1-10 and ABC Companies 1-10, are all unknown entities sued under fictitious names. For that reason, their citizenship "shall be disregarded." 28 U.S.C. § 1441(b).

26.    On Plaintiffs' side, all individual persons appear to be citizens of New Jersey. *See supra* ¶¶ 11-17.

27.    Atlas is a corporation. Ordinarily, its citizenship would be determined by "the state where it is incorporated and … the state where it has its principal place of business." *Zambelli*, 592 F.3d at 419. Here, however, the Court should disregard Atlas's citizenship because Atlas has—collusively and improperly—used assignments to destroy diversity.

28.    It is a long-recognized principle of jurisdiction that "Federal courts should not sanction devices intended to prevent a removal to a Federal court where

one has that right." *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176,

186 (1907); *see also Ex parte Nebraska*, 209 U.S. 436, 444 (1908) ("[T]he mere

presence on the record of [a non-diverse] party plaintiff will not defeat the

jurisdiction of the Federal court when it appears that the [party] has no real interest

in the controversy."). For that reason, the Supreme Court has "interpreted the

diversity jurisdiction statute to require courts in certain contexts to look behind the

pleadings to ensure that parties are not improperly creating or destroying diversity

jurisdiction." *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 174

(2014).

29.     Collusive assignment is one of the "devices" that are sometimes

employed to avoid federal court. *Wecker*, 204 U.S. at 186. To be sure, "[t]he

more common case is one in which a plaintiff has attempted to *create* diversity

jurisdiction by making an improper or collusive assignment." *Attorneys Tr. v.*

*Videotape Comput. Prods., Inc*., 93 F.3d 593, 595 (9th Cir. 1996) (emphasis

added). But a "destruction of diversity case" involves the same "informing

principles." *Id.*; *see also Grassi v. Ciba-Geigy, Ltd*., 894 F.2d 181, 186 (5th Cir.

1990) ("[A]ssignments which destroy diversity and assignments which create

diversity should be analyzed under the same standard . . . ."). "In either event,

another party is deprived of a forum to which he would otherwise be entitled, and

the jurisdiction which Congress conferred upon the federal courts is manipulated."

*Attorneys Tr.*, 93 F.3d at 598; *see also Grassi*, 894 F.2d at 185 (recognizing that Congress "created diversity jurisdiction and the right of removal … for the purpose of protecting non-resident litigants from local prejudice" and that the need for it ""may well be greatest when the plaintiff tries hardest to defeat it'").

30.     When an assignment appears to destroy diversity, "federal district courts have both the authority and the responsibility" to examine its nature and "to disregard the assignment in determining jurisdiction if it be found to have been made principally to defeat removal."   *Grassi*, 894 F.2d at 185; *see also Attorneys Tr.*, 93 F.3d at 598 ("[T]he nature of the assignment must be considered . . . ."); Wright & Miller, 13F Fed. Prac. & Proc. Juris. § 3641 (3d ed. 2023) ("[F]ederal courts today are more likely to exercise vigilance in protecting the rights of litigants to invoke federal jurisdiction by exercising their authority to examine the underlying nature of transactions that have the effect of destroying diversity jurisdiction.").[2]

31.     Courts look at various "factors" to determine whether an assignment was collusive or improper, and thus insufficient to destroy diversity jurisdiction.

---

[2]  Choreograph does not concede that Atlas's assignments were valid under New Jersey law.   Even if they were, that would not defeat diversity, because "[t]he existence of federal jurisdiction is a matter of federal, not state law."   *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 829 (1969) (rejecting argument that "the undisputed legality of the assignment under Texas law necessarily rendered it valid for purposes of federal jurisdiction").

9

*Grassi*, 894 F.2d at 186.   Those factors generally include:   the size of the

assigned interest, the assignee's interest in the litigation before assignment, when

the assignment was effectuated, the motive for the assignment,[3] whether the

assignee is a true party in interest, and the likelihood of prejudice to the defendant.

*See id.*; *Attorneys Tr.*, 93 F.3d at 597.   Courts are especially "sensitive to and

concerned by manipulations of their jurisdiction with partial assignments which

lack reality and amount to no change in the identity of the party with the real

interest in the outcome of the case."   *Attorneys Tr.*, 93 F.3d at 597.[4]   Even where

"a good outcome would have had some economic value" for the assignee, an

assignment is collusive if "the assignee [is] a strawman and ha[s] no real interest in

the outcome of the case."   *Id.* at 598.

---

[3]  The Court need not rely on close scrutiny of Atlas's subjective motivation, because "there is no reason to give motive controlling weight in every case." *Attorneys Tr.*, 93 F.3d at 596.   The facts laid out below—showing Atlas's choice to incorporate in Delaware, then lobby the New Jersey Legislature for a statutory amendment allowing assignments, then obtain almost 20,000 assignments from individuals who could have brought suit without any such assignments, and then sue a Delaware corporation—reek of subjectively improper motive.   But even if the Court is unconvinced, the "objective fact of who really is the party in interest is the most important thing to be determined."   *Id.*

[4]  Debate about whether the assignments were "'complete'" or "'partial'" "is ultimately a non-starter because 'even when there is a complete assignment, collusion may be found'" where, as here, there is "'opportunity for manipulation.'" *First Nat'l Bank in Sioux Falls for Sequoia Charitable Tr. v. Warner Bros. Ent. Inc.*, 2009 WL 10671378, at *4 (C.D. Cal. July 10, 2009) (quoting *Attorneys Tr.*, 93 F.3d at 596-597).

32.     Determining whether an assignment is improper or collusive requires a "finding of fact," *Grassi*, 894 F.2d at 186, based on the "facts and circumstances" surrounding the assignment.   *Attorneys Tr.*, 93 F.3d at 600.   "'[I]t is the reality of an assignment, not the term used to describe it, that courts should look to determine whether it was collusive."   *NPD Mgmt. & Bldg. Servs., Inc. v. Geismar N. Am., Inc.*, 2021 WL 5231870, at *4 (E.D. La. Nov. 10, 2021).   Courts permit defendants to take jurisdictional discovery on the question where necessary.   *See, e.g.*, *Cambridge Place Inv. Mgmt., Inc. v. Morgan Stanley & Co.*, 794 F. Supp. 2d 265, 268 (D. Mass. 2011); *NPD Mgmt.*, 2021 WL 5231870, at *2; *see also Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997) ("Our rule is generally that jurisdictional discovery should be allowed unless the plaintiff's claim is 'clearly frivolous.'").

33.     Undisputable facts here demonstrate, without the need for discovery, that the assignments to Atlas were collusive because Atlas is a litigation vehicle and not a real party in interest.[5]

---

[5] To the extent the Court disagrees, Choreograph respectfully requests that the Court order limited jurisdictional discovery on the topic of Atlas's assignments. *See Farrell v. FedEx Ground Package Sys., Inc.*, 478 F. Supp. 3d 536, 540 (D.N.J. 2020) ("When the sufficiency of the jurisdictional allegations in a notice of removal is challenged, the parties must submit proofs for the court to decide, by a preponderance of the evidence, whether the jurisdictional requirements are satisfied.").   Atlas has already volunteered to "provide Defendants with the

34.     The timing of Atlas's formation and activity reveals that it is not a true party in interest to the Daniel's Law claims it asserts—but, instead, a litigation vehicle crafted to defeat diversity.    Atlas did not exist when Daniel's Law was enacted, in November 2020.    *See* Compl. ¶ 8; Del. Dep't of State, Div. of Corps., https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx (follow hyperlink; then search entity name field for "Atlas Data Privacy Corporation").    In April 2023, Atlas's current litigation counsel registered as the company's New Jersey lobbyist.    *See* **Exhibit B; Exhibit C**.    Three months later, the New Jersey Legislature amended Daniel's Law to allow covered persons to assign their interests to companies like Atlas for litigation purposes—an amendment the complaint takes care to highlight and rely on.    *See* Compl. ¶ 48 (citing P.L. 2023, c. 113); *see also id*. ¶ 51 (observing that Atlas received assignments "[i]n accordance with Daniel's Law").[6]    The amendments also made previously optional damages provisions mandatory, skyrocketing the value of litigation claims.    *Id.* at ¶ 50.    Atlas registered to do business in New Jersey in January

---

assignments and other information for each of the Covered Persons," following entry of a protective order.    Compl. ¶ 36.

[6]  Attorney Mark Mao of Boise Schiller Flexner, who represents Atlas in certain New Jersey litigations that parallel this one, notes on his website biography that he "worked on amendments to Daniel's Law."    Hsiao (Mark) C. Mao, Boies Schiller Flexner, https://www.bsfllp.com/people/mark-mao.html.

2024.  *See* N.J. Dep't of Treasury, Div. of Revenue & Enter. Servs.,
https://www.njportal.com/DOR/BusinessNameSearch/Search/BusinessName
(follow hyperlink; then search business name field for "Atlas Data Privacy
Corporation").   Around the same time, Atlas began coordinating the delivery of
thousands of Daniel's Law requests to future defendants in Atlas-led litigation—
presumably having secured assignments from covered persons.   *See* Compl. ¶ 51.
Within weeks, Atlas started filing hundreds of lawsuits, many of them (like this
one) against Delaware corporations.   Atlas makes no allegation that it has any
offices in Delaware or does any business there.

35.    Against this backdrop, all relevant factors show improper assignment.
"The objective fact of who really is the party in interest is the most important thing
to be determined," and, for all "practical purposes," Atlas is not a "party in
interest."   *Attorneys Tr.*, 93 F.3d at 596-597.   Atlas is not covered under Daniel's
Law because it is not a "judicial officer, law enforcement officer, or child
protective investigator," or one's family member.   N.J. Stat. Ann. § 56:8-166.1.
Atlas marketed its services to covered persons as follows:   "*You* select the data
brokers to whom you want to send takedown notices," "*You* review takedown
notice templates," "*You* send takedown notices."   Compl. ¶ 32 (emphasis added).
Covered persons use Atlas's platform to protect *their* (not Atlas's) personal
information.   *See id.* ¶ 33.

13

36.     Atlas had no interest in this lawsuit before the assignments and, still today, asserts no interest of its own under Daniel's Law.  *See Liberty Int'l Underwriters Can. v. Scottsdale Ins. Co*., 955 F. Supp. 2d 317, 333 (D.N.J. 2013) ("'[A]bsent a provision stating otherwise, assignment … will result in the assignee stepping into the shoes of the assignor with regard to the rights that the assignor held and not in an expansion of those rights to include those held by the assignee.'").   Nor could it.  *See* Compl. ¶ 41 (acknowledging that "Daniel's Law was passed to protect those who serve").   To be sure, the suit promises economic value for Atlas to the extent Atlas has contingently secured some portion of the assignors' recovery, or perhaps even plans to pocket the entirety of any recovery that is awarded to covered persons (presumably to profit beyond some fixed compensation Atlas has already given to the assignors).   Either of these arrangements is akin to contingency-fee legal representation, and courts recognize that the right of access to a federal forum "would be an illusory one indeed if a plaintiff could defeat it by the simple expedient of assigning a fractional interest in the outcome of the suit to an agent performing what is essentially litigation support on a contingent fee basis."  *Grassi*, 894 F.2d at 185.

37.     Counting Atlas's citizenship also creates a "strong likelihood of prejudice" for Choreograph—namely, loss of the "right to proceed in federal court."  *NPD Mgmt*., 2021 WL 5231870, at *6.   "[O]ne of the reasons underlying

diversity jurisdiction" is "the prevention of discrimination against out-of-state litigants," such as Choreograph.   *McSparran v. Weist*, 402 F.2d 867, 876 (3d Cir. 1968).   The Court should not let collusive assignment deprive Choreograph of that protection.

38.    For the foregoing reasons, Atlas's citizenship should not be considered.

39.    The remaining parties are completely diverse, with New York and Delaware on Defendants' side and New Jersey on Plaintiffs' side.

## II.    *The Amount in Controversy Exceeds $75,000*

40.    Under 28 U.S.C. § 1332, the "matter in controversy" must "exceed[] the sum or value of $75,000."[7]   This one easily does.

41.    The complaint seeks, and Daniel's Law requires, award of:

(1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;

(2) punitive damages upon proof of willful or reckless disregard of the law;

(3) reasonable attorney's fees and other litigation costs reasonably incurred; and

---

[7] Where, as here, "the plaintiff has not specifically averred in the complaint that the amount in controversy is less than the jurisdictional minimum," remand is only appropriate "if it appears to a legal certainty that the plaintiff *cannot* recover the jurisdictional amount."   *Frederico v. Home Depot*, 507 F.3d 188, 197 (3d Cir. 2007).

(4) any other preliminary and equitable relief as the court determines to be appropriate.

Compl. ¶ 50 (quoting N.J. Stat. Ann. § 56:8-166.1); *see id.* at 21-22

(requesting judgment ordering same).

42.    Each individual plaintiff's claims readily exceed the $75,000

threshold.[8]    Each one brings a Daniel's Law claim against 21 defendants—

Choreograph, Richard Roes 1-10, and ABC Companies 1-10.

43.    Each plaintiff therefore pleads actual damages amounting to,

minimally, $21,000.[9]    Then there are punitive damages.[10]    "Under New Jersey

law, [a plaintiff] can collect punitive damages of up to five times the compensatory

damages."    *Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007); *see also*

*Atl. Util. Trailer Sales Inc. v. Harco Nat'l Ins. Co.*, 2020 WL 3287129, at *2

(D.N.J. June 18, 2020) ("For purposes of the amount in controversy calculation,

---

[8]  Only one plaintiff's claims need to.    *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005) ("[W]here … at least one named plaintiff in the action satisfies the amount-in-controversy requirement, § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction.").

[9]  Likely much higher.    The complaint alleges, for example, that plaintiff Patrick Cooligan "install[ed] … a surveillance camera system and alarm system." Compl. ¶ 22.

[10]  "[C]laims for punitive damages may be aggregated with claims for compensatory damages."    *Huber v. Taylor*, 532 F.3d 237, 244 (3d Cir. 2008).

16

courts assume this maximum 'five times' multiplier."). Each plaintiff's punitive damages thus amount to $105,000—resulting in $126,000 when combined with actual damages. Of course, $126,000 is more than $75,000.

44.     But there is more. Because Daniel's Law specifically provides for recovery of attorneys' fees, N.J. Stat. Ann. § 56:8-166.1(c)(3), attorneys' fees are "necessarily part of the amount in controversy." *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997), *as amended* (Feb. 18, 1997). Thirty percent of damages is a reasonable approximation for a fee award. *See Alegre v. Atl. Cent. Logistics*, 2015 WL 4607196, at *6 (D.N.J. July 31, 2015). Here, that adds $37,800 to each plaintiff's amount in controversy.

45.     Finally, there is the request for injunctive relief. "Where the plaintiff in a diversity action seeks injunctive or declaratory relief, … the amount in controversy is determined by 'the value of the object of the litigation,'" which means "the value of the rights which the plaintiff seeks to protect." *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 539, 541 (3d Cir. 1995). It is difficult to quantify the value of ongoing compliance with Daniel's Law, but Plaintiffs would surely assert value in excess of $75,000. Even assuming the value of injunctive relief is limited to $75,000 alone, each individual plaintiff puts a total of at least $238,800 in controversy.

46.     Atlas, as assignee, multiplies that figure by 19,251 assignors.

17

47.    For the foregoing reasons, the amount-in-controversy requirement is well satisfied and the Court has jurisdiction over this matter under 28 U.S.C. § 1332.

## CAFA JURISDICTION

48.    The Court also has jurisdiction under the Class Action Fairness Act of 2005 ("CAFA")[11] because this matter is a "mass action" or, alternatively, a "class action."   "Class and mass actions filed in state court that satisfy CAFA's requirements may be removed to federal court."   *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 166 (2014).

*I.    CAFA Mass Action Jurisdiction Is Satisfied*

49.    CAFA defines a "mass action" as:

> any civil action (except a civil action within the scope of section 1711(2)) in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a).

28 U.S.C. § 1332(d)(11)(B)(i).

50.    "Congress included mass-action provisions in CAFA" because the "'drafters feared that large-scale state litigation—deemed mass actions and brought under non-class joinder and consolidation rules—would evade CAFA's removal

---

[11]  Pub. L. No. 109-2, 119 Stat. 4 (codified under various sections of 28 U.S.C.).

provisions simply because [such] litigation was not pursued under class action rules.'" *Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 318 (3d Cir. 2022) (alteration in original).

51.     A mass action is removable under CAFA if it meets the requirements under 28 U.S.C. § 1332(d)(2)-(10).   *See* 28 U.S.C. § 1332(d)(11)(A); *OptumRX*, 43 F.4th at 319.   Those requirements are (1) minimal diversity; (2) a minimum $5,000,000 aggregate amount in controversy; and (3) numerosity.   *See AU Optronics Corp.*, 571 U.S. at 165-166.   In addition, federal jurisdiction "shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a)."   28 U.S.C. § 1332(d)(11)(B)(i).

52.     This case satisfies all of CAFA's mass action requirements because (1) there is minimal diversity between the parties; (2) the aggregate amount in controversy is greater than $5,000,000; and (3) the monetary relief claims of more than 100 persons are proposed to be tried jointly.   Furthermore, because each plaintiff puts more than $75,000 in controversy, this Court has jurisdiction over all plaintiffs.

### A.  Minimal Diversity

53.     Under CAFA, the minimal diversity requirement is satisfied if "any member of a class of plaintiffs is a citizen of a State different from any defendant[.]"   28 U.S.C. § 1332(d)(2)(A).

19

54.    For purposes of CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."   *Id*. § 1332(d)(10).   Choreograph is a citizen of Delaware (place of incorporation) and New York (principal place of business).

55.    All individual plaintiffs appear to be citizens of New Jersey.   *See supra* ¶¶ 11-17.

56.    Because Choreograph's citizenship (Delaware and New York) is different from the citizenship of at least one plaintiff (New Jersey), CAFA's minimal diversity requirement is satisfied.

*B. Aggregate Amount in Controversy*

57.    CAFA requires that the aggregate amount in controversy "exceeds the sum or value of $5,000,000, exclusive of interest and costs[.]"   28 U.S.C. § 1332(d)(2).[12]

58.    Plaintiffs' claims, when aggregated, far exceed that amount.   As described above, *see supra* ¶¶ 41-45, each plaintiff puts, at least, $238,800 in

---

[12]  As noted *supra* ¶ 40 n.7, the plaintiffs here have "not specifically averred in the complaint that the amount in controversy is less than the jurisdictional minimum," thus remand is only appropriate "if it appears to a legal certainty that the plaintiff *cannot* recover the jurisdictional amount."   *Frederico*, 507 F.3d at 197.

controversy.   Atlas intends to pursue relief on behalf of 19,251 assignees—

bringing the amount in controversy to more than $4.5 billion.[13]

    *C. Numerosity*

59.   CAFA's definition of a "mass action" requires "monetary relief

claims of 100 or more persons [that] are proposed to be tried jointly on the ground

that the plaintiffs' claims involve common questions of law or fact[.]"   28 U.S.C.

§ 1332(d)(11)(B)(i).

60.   The focus is on the number of claims, not the number of persons.   *See*

*Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008) ("The

question is not whether 100 or more plaintiffs answer a roll call in court, but

whether the 'claims' advanced by 100 or more persons are proposed to be tried

jointly.").   Here, Atlas alleges that it "asserts claims against Defendants as the

assignee of the claims of approximately 19,251 individuals[.]"   Compl. ¶ 26; *see*

*Liberty Int'l Underwriters Can.*, 955 F. Supp. at 333 ("An assignment is the

transfer of rights held by one party—the assignor—to another party—the

---

[13] Actual damages against Choreograph alone pass the threshold.   Each assignee
seeks $1,000 and Atlas brings claims for 19,251 assignees—totaling $19,251,000
in controversy.

assignee.").    Thus, this action seeks monetary relief on claims of more than 100 persons.[14]

61.    Plaintiffs propose to try these claims jointly.    "Where a single complaint joins more than 100 separate claims involving common questions of law and fact, there is a presumption that those plaintiffs have implicitly proposed a joint trial."    *Ramirez v. Vintage Pharms., LLC*, 852 F.3d 324, 329 (3d Cir. 2017); *accord Koral v. Boeing Co.*, 628 F.3d 945, 947 (7th Cir. 2011) ("[T]he proposal can be implicit, as where a single complaint joins more than 100 plaintiffs' claims without proposing a joint trial, for the assumption would be that a single trial was intended—one complaint, one trial, is the norm.").    Here, Plaintiffs have combined the claims of the 19,251 assignors along with the claims of the eight

---

[14]   In *AU Optronics Corp*., the Supreme Court held that a *parens patriae* action was not a mass action.    *Parens patriae* actions require assertion of "a quasi-sovereign interest"—indeed, "[i]n order to maintain such an action, the State must articulate an interest apart from the interests of particular private parties."    *Alfred L. Snapp & Son, Inc. v. P.R., ex rel., Barez*, 458 U.S. 592, 607 (1982); *see AU Optronics Corp.*, 571 U.S. at 169 (case involved claims of unnamed, "unspecified individuals").    Assignment is the exact opposite—assumption of the identical interests of "particular private parties."    *Alfred L. Snapp & Son*, 458 U.S. at 607. Atlas, as assignee, "stand[s] in the shoes" of the 19,251 specific, readily-identifiable assignors, and has "'standing to assert whatever rights the assignor[s] possessed.'"    *CardioNet, Inc. v. Cigna Health Corp*., 751 F.3d 165, 178 (3d Cir. 2014) (emphasis omitted); *see also Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 185 (5th Cir. 1990) ("[T]he assignor who makes a fractional assignment remains a party to the action.").    Thus, this case is unlike the *parens patriae* action in *AU Optronics Corp.*

individual plaintiffs in a single complaint.   As a result, Plaintiffs have proposed to try these claims jointly.

62.    The asserted claims involve common questions of law and fact. Plaintiffs' complaint says exactly that, titling one section, "FACTS COMMON TO ALL COUNTS," Compl. at 18, and asserting a single legal basis for relief across all claims.   *See id*. ¶¶ 56-61.   There are no operative facts or legal issues alleged to be unique to any individual plaintiff.   Indeed, seeking consolidation in state court, Plaintiffs argued that all 42 complaints they filed in Bergen County "involve a common nucleus of law and a significant overlap of operative facts."   *See* **Exhibit D** at 1.   Plaintiffs' claims in this case thus undisputably involve common issues of law and fact.

*D. Individual Amount in Controversy*

63.    As explained above, "federal jurisdiction in a mass action, unlike a class action, 'shall exist only over those plaintiffs' whose claims individually satisfy the $75,000 amount in controversy requirement."   *AU Optronics Corp*., 571 U.S. at 166; 28 U.S.C. § 1332(d)(11)(B)(i).

64.    Here, each plaintiff puts well over $75,000 in controversy.   *See supra* ¶¶ 41-45.

II.    *CAFA Class Action Jurisdiction Is Satisfied*

65.    In the alternative, jurisdiction exists under CAFA's class action provisions.   CAFA defines a "class action" as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action[.]"   28 U.S.C. § 1332(d)(1)(B).

66.    A class action is removable under CAFA if it meets the requirements under 28 U.S.C. § 1332(d)(2)-(10):   (1) minimal diversity; (2) a minimum $5,000,000 aggregate amount in controversy; and (3) numerosity.   *See AU Optronics Corp.*, 571 U.S. at 165-166.

67.    This suit satisfies all of CAFA's class action requirements because (1) there is minimal diversity between the parties; (2) the aggregate amount in controversy exceeds $5,000,000; (3) the putative class exceeds 100 members; and (4) the suit is filed as a representative action that implicates Rule 23 or a state-law analog to Rule 23.

A.  *Minimal Diversity*

68.    As described above, because Choreograph's citizenship is different from the citizenship of at least one plaintiff, CAFA's minimal diversity requirement is satisfied.   *See supra* ¶¶ 53-56.

24

### B.  Aggregate Amount in Controversy

69.     As described above, Plaintiffs' claims far exceed the $5,000,000

aggregate amount-in-controversy requirement.   *See supra* ¶¶ 57-58.

### C.  Numerosity

70.     Under CAFA, "the number of members of all proposed plaintiff

classes in the aggregate" must be at least 100 members.   28 U.S.C. § 1332(d)(5).

"The term 'class members' means the persons (named or unnamed) who fall within

the definition of the proposed or certified class in a class action."   *Id.*

§ 1332(d)(1)(D).   Partial assignees "can be counted as class members when

evaluating whether a class meets Rule 23's numerosity requirement."   *Winn-Dixie*

*Stores, Inc. v. E. Mushroom Mktg. Coop.*, 2020 WL 5211035, at *10 (E.D. Pa.

Sept. 1, 2020).

71.     Here, the proposed class consists of 19,259 members—Atlas as

assignee for 19,251 assignors, Jane Doe-1, Jane Doe-2, Edwin Maldonado, Scott

Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev, and William

Sullivan.   The numerosity requirement for the purposes of CAFA jurisdiction is

therefore satisfied.

### D.  Representative Action

72.     An action is a "class action" under CAFA if it is filed under a "State

statute or rule of judicial procedure" that is "similar" to Federal Rule of Civil

Procedure 23 in "authorizing an action to be brought by 1 or more representative persons as a class action[.]"   28 U.S.C. § 1332(d)(1)(B).

73.    Under New Jersey Court Rule 4:32, "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

74.    New Jersey Court Rule 4:32 is an analog for Federal Rule of Civil Procedure 23.   *See*, *e.g.*, *Pac. Coast Fed'n of Fishermen's Ass'n, Inc. v. Chevron Corp.*, 2023 WL 7299195, at *1 (N.D. Cal. Nov. 1, 2023) ("The complaint thus pleads a representative action authorized by section 382 of the California Code of Civil Procedure," which "allows a plaintiff to sue and seek relief on behalf of absent parties," and thus "resembles a damages class action under Rule 23 of the Federal Rules of Civil Procedure.").

75.    Although the complaint does not cite to New Jersey Court Rule 4:32, that strategic omission does not exempt the case from CAFA's ambit.   "If a complaint does not satisfy CAFA's jurisdictional requirements on its face, [courts] must cut through any pleading artifice to identify whether the case is in substance an interstate class action."   *Erie Ins. Exch. v. Erie Indem. Co.*, 68 F.4th 815, 819

(3d Cir. 2023), *cert. denied*, 2024 WL 759808 (U.S. Feb. 24, 2024).  "[C]ourts must be careful not to 'exalt form over substance' when determining whether a case satisfies CAFA's jurisdictional requirements.'"  *Id.* at 819-820.

76.    Here, the complaint meets the requirements of a class action in New Jersey, and it is "in substance a class action, . . . notwithstanding [Plaintiffs'] artificial attempt to disguise the true nature of the suit."  *Addison Automatics, Inc. v. Hartford Cas. Ins. Co.*, 731 F.3d 740, 742 (7th Cir. 2013) (denying remand under CAFA where plaintiff, an assignee of class rights, unsuccessfully attempted to omit reference to Rule 23 in the pleadings to avoid federal jurisdiction).  Atlas brings this suit in its capacity as assignee for the claims of 19,251 assignors. Numerosity and commonality are satisfied.  *See supra* ¶¶ 70-71; *see also supra* ¶ 62; Compl. ¶¶ 56-61 ("FACTS COMMON TO ALL COUNTS").  Likewise, although Plaintiffs do not cite any joinder rule, the complaint does not explain how Plaintiffs could join more than 19,000 claims in a single suit, absent the class action mechanism.[15]

77.    Thus, all requirements for CAFA jurisdiction over a class action are met.

---

[15] Choreograph does not concede that Plaintiffs have established, or could establish, any requirement for class certification.

III.   *None of the CAFA Exceptions Applies*

78.    Two mandatory exceptions and one discretionary exception carve out certain cases from CAFA's broad grant of federal jurisdiction.   *See* 28 U.S.C. § 1332(d)(3)-(5); *AU Optronics Corp.*, 571 U.S. at 166 n.1.   Neither applies here.

79.    Simply, each CAFA exception requires an in-state defendant.   *See* 28 U.S.C. § 1332(d)(3), (d)(4)(A)(II), (d)(4)(B).   Choreograph is not a citizen of New Jersey and the Court does not consider the citizenship of unnamed defendants for purposes of jurisdiction under CAFA.   *See* 28 U.S.C. § 1441(b)(1); *see also Button v. Dollar Gen. Corp.*, 2023 WL 5109754, at *4 (D.N.J. Aug. 9, 2023) (declining to consider "unnamed John Doe defendants" in a CAFA local-controversy exception inquiry, "as they are not yet parties to this action").

80.    That alone means none of the CAFA exclusions applies.

81.    Moreover, this action does not fall into any of the exceptions to the definition of "mass action" under CAFA.   28 U.S.C. § 1332(d)(11)(B)(ii).

82.    The "claims in this action" do not "arise from an event or occurrence in the State in which the action was filed[.]"   28 U.S.C. § 1332(d)(11)(B)(ii)(I).   Instead, the crux of Plaintiffs' case is that "Defendants failed to respond to [certain] notices and, upon information and belief, cease [certain] disclosure or re-disclosure on the Internet or … otherwise[.]"   Compl. ¶ 53.   As explained above, Choreograph is incorporated in Delaware and has its principal place of business in

28

New York.   As a result, Choreograph's alleged wrongdoing—failure to cease the disclosure of certain information—did not take place in New Jersey.

83.    None of the other exceptions to the definition of a "mass action" applies here either.   None of the claims was "joined upon motion of a defendant," 28 U.S.C. § 1332(d)(11)(B)(ii)(II), "asserted on behalf of the general public," *id.* § 1332(d)(11)(B)(ii)(III), or "consolidated or coordinated solely for pretrial proceedings," *id.* § 1332(d)(11)(B)(ii)(IV).

## 28 U.S.C. § 1446(a) REQUIREMENTS

84.    This removal is timely.   A notice of removal may be filed within 30 days after the defendant receives a copy of the initial pleading, motion, or other paper from which it may be ascertained that the case is removable.   *See* 28 U.S.C. § 1446(b).   On February 26, 2024, Atlas delivered the complaint to Choreograph's registered agent in New York

85.    A copy of the complaint and all process, pleadings, and orders filed in the state action is attached as **Exhibit A**.

86.    This Court is part of the district and division within which this action was filed.   *See* 28 U.S.C. § 1446(a).

87.    A copy of this Notice of Removal is being filed with the Clerk of the Superior Court of New Jersey, Law Division, Bergen County, and is being served on counsel of record, consistent with 28 U.S.C. §§ 1446(a), (d).

WHEREFORE, for the reasons stated above, Choreograph submits this

Notice of Removal filed in this Court on March 27, 2024.


Dated: March 27, 2024                    /s/ Alan Schoenfeld
New York, New York                       Alan Schoenfeld (New Jersey Bar No.
                                         285532018)
                                         Marissa M. Wenzel*
                                         Todd Clayton*
                                         WILMER CUTLER PICKERING
                                               HALE AND DORR LLP
                                         7 World Trade Center
                                         250 Greenwich Street
                                         New York, NY 10007
                                         (212) 230-8800 (phone)
                                         (212) 230-8888 (fax)
                                         alan.schoenfeld@wilmerhale.com
                                         marissa.wenzel@wilmerhale.com
                                         todd.clayton@wilmerhale.com

                                         Christopher Davies*
                                         WILMER CUTLER PICKERING
                                               HALE AND DORR LLP
                                         2100 Pennsylvania Avenue NW
                                         Washington, DC 20037
                                         (202) 663-6000 (phone)
                                         (202) 663-6363 (fax)
                                         christopher.davies@wilmerhale.com

                                         *Attorneys for Defendant Choreograph
                                         LLC*

                                         *Motion for admission* pro hac vice
                                         *forthcoming*

### STATEMENT UNDER LOCAL RULES 11.2 AND 201.1

Pursuant to Local Rule 11.2, it is hereby stated that the matter in controversy between the parties is not subject to any other action pending in any other Court or of a pending arbitration proceeding other than the state court action removed by this Notice:    BER-L-00920-24 in the Superior Court of New Jersey, Law Division, Bergen County.

Pursuant to Local Rule 201.1, it is hereby stated that the complaint seeks damages exceeding the sum of $150,000 exclusive of interest and costs and any claim for punitive damages.


Dated: March 27, 2024                    */s/ Alan Schoenfeld*

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on this day, the foregoing was filed electronically via the

Court's CM/ECF system.    A copy was served via Federal Express on the

following counsel for Plaintiffs:

Rajiv D. Parikh
Kathleen Barnet Einhorn
Genova Burns LLC
494 Broad Street
Newark, NJ 07102
rparikh@genovaburns.com
keinhorn@genovaburns.com

John A. Yanchunis
Ryan J. McGee
Morgan & Morgan
201 N. Franklin Street,
7th Floor
Tampa, FL 33602
jyanchunis@forthepeople.com
rmcgee@forethepeople.com

Dated: March 27, 2024                */s/ Alan Schoenfeld*